23-2954

# United States Court of Appeals for the Seventh Circuit

Aundre Evans
Appellant

v.

Andrew Matson and
Robert Rasmussen
Appellees

# APPELLANTS' BREIF AND SHORT APPENDIX

U.S.C.A. — 7th Circuit
RECEIVED
JAN 23 2024  4

Aundre Evans
Pro Se
2005 Hickory Grove Ave.
Racine, WI 53403
(262) 498-9519
Aevans1983@icloud

Appellant, Aundre Evans "Pro Se", hereby submit this breif and short appendix on 1-18-2024.

"Pro Se"

# Table of Content

Page

Table of Authorities                              1.

Argument                                          2.

Circuit Court Ruling                              4.

United state District Court order                 9.

# Table of Authorities

1.) Anderson vs. Liberty Lobby 477. U.S. 242

2.) PP. 477 U.S. 247-252.

1

# Introduction

# Argument

On October 9th 2015, the Honorable Judge John S. Jude of the Racine Circuit Court of Wisconsin entered a order and rule that; "Officer Matson did not have reason to believe that the residence of the unit were threatend" because Officer Matson lacked probable cause to believe Mr. Evans (Appellant) had committed, or was committing any other crime than obstructing, the entry into the residence violated Mr. Evans's 4th amendment rights.

On November 5th 2015, Appellant's attorney filed a reply motion for the Court to uphold its October 9th 2015 decision in Plaintiff's favor.

On May 23rd 2016, the court upheld its October 9th 2015 decision and terminated the case in favor of the Appellant, finding that the Appellant's 4th amendment rights were in fact violated.

Pursuant to Anderson vs. Liberty Lobby, 477. U.S. 242
(a) Summary Judgment will not lie if the dispute about the material fact is "genuine" that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. At the summary Judgment stage, the trial Judge's function is not to himself weight the evidence and determine the truth of the matter, but to determine if there is a "genuine" issue for trial. There is no such issue unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that person.

2.

In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one side must prevail as a matter of law. PP. 477. U.S. 247-252.

Honorable Judge Lynn Adleman errored by dismissing;

1.) Unlawful arrest

2.) Malicious Prosecution

3.) false Arrest

These charges were not challenged or Appealed by the Appellee's in the Racine, wisconsin Circuit Court.

WHEREFORE, Appellant Pleads with this Honorable Court to enter a order in favor of Appellant.

Respectfully singed and dated this 18-th day of January, 2024.

1-18-2024

Aundre Evans "Pro Se"
Aund LP
(262) 498-9519
Aevans19831@icloud.com

3

STATE OF WISCONSIN
    Plaintiff

        vs.

ANDRE EVANS
    Defendant

**FILED**

OCT 0 9 2015

CLERK OF CIRCUIT COURT
RACINE COUNTY

DECISION

Case No. 14 CF 570

On April 14, 2104, Andre Evans was arrested for obstructing/resisting and possession of a firearm by a felon. Evans has asserted a Fourth Amendment violation based on a warrantless entry into a residence without probable cause. The State's position is that exigent circumstances existed for the warrantless entry because the officer was in hot pursuit of a burglary suspect and an objective officer could reasonably perceive that the safety of other people in the residence was threatened. See State v. Richter, 235 Wis.2d 524. Evans maintains that the officer must have both exigent circumstances and probable cause that the person sought committed a crime. Because the police only had probable cause to believe Evans committed a misdemeanor and did not have probable cause to believe Evans was the burglary suspect, the police could not pursue Evans into a residence without a warrant. See State v. Mikkelson, 256 Wis.2d 132. The challenge here is which legal principle fits the facts of the case.

FINDINGS OF FACT

Officer Matson of the Racine Police Dept. was responding to a burglary in progress at 2812 Lorraine Ave. in Racine. He was informed by another officer that a person matching the description of the suspect walked into the apartment complex at 2627 Jacato Dr. The suspect was described as a black male, 5'8", wearing a navy blue jacket. Officer Matson entered the building and eventually checked out footsteps in the basement. He observed Evans trying to open a basement door. Evans is a black male approximately 5'8". Evans was wearing a black jacket.

Despite no other information that Evans was the same individual the other officer saw enter the apartment building, Matson believed Evans matched the description of the burglary suspect. When Evans saw Matson, Evans "appeared startled" and took off running. Matson yelled, "Police, stop!" Evans ran to Apartment 9, opened the door, and crossed the threshold. Matson arrived as Evans was entering the door. I conclude from the testimony that Matson was able to grab Evans before the door closed. Evans was attempting to close the door from inside the unit and Matson was pushing the door open while holding onto some part of Evans. Matson had to reach across the threshold or had a portion of his body across the threshold when he grabbed Evans. I conclude that Matson entered the apartment when he seized Evans. The momentum of the struggle carried Matson into the apartment where Evans was subdued.

LEGAL STANDARDS

A police officer's warrantless entry into a private residence is presumptively prohibited by the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution. State v. Hughes, 233 Wis.2d 280. However, the courts have recognized exceptions to the warrant requirement where the government can show both probable cause and exigent circumstances that overcome the individual's right to be free from government interference. Id.

Probable cause to arrest exists when, at the time of the arrest, an officer has within his or her knowledge reasonably trustworthy facts and circumstances sufficient to warrant a reasonably prudent person's belief that the suspect has committed or is committing a crime. **State v. Kiekhefer,** 212 Wis.2d 460, 484,

Once probable cause has been established, the State must then demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless

home entries. **State v. Kryzaniak**, 2001 WI App 44, ¶ 16. Four factors have been identified that, when measured against the time needed to obtain a warrant, constitute exigent circumstances: (1) an arrest made in "hot pursuit," (2) a threat to the safety of a suspect or others, (3) a risk that evidence would be destroyed, and (4) a likelihood that the suspect would flee. Id. In this case, we are concerned with hot pursuit. Hot pursuit is that circumstance where there is an "immediate or continuous pursuit of [a suspect] from the scene of a crime." Id., ¶ 17.

Evans does not dispute the existence of probable cause to arrest him for obstructing by disregarding a police officer's command to stop. Instead, he challenges the hot pursuit exigency on the basis that there is no probable cause to believe that Evans was the burglary suspect. Evans further points out that obstructing is a misdemeanor. **State v. Mikkelson**, 256 Wis.2d 132 prohibits a warrantless entry into a home under exigent circumstances where the crime involved is a misdemeanor.

As in Mikkelson, the defendant, Evans, engaged in suspicious behavior by appearing to enter a basement door, disregarded a police order to stop, and fled into a residence.

The State relies on **State v. Richter**, 235 Wis.2d 524, to support its position that the officer in this case was faced with the exigent circumstance of hot pursuit. The Richter court held the pursuit of a suspected burglar is continuous for purposes of the hot pursuit doctrine even though the officer himself arrived after the crime had occurred and, therefore, did not personally observe the crime or the fleeing suspect. Id. at 543, 545.

There are factual distinctions between this case and the Richter case. In Richter, an eye witness reported to the responding officer that an intruder exited her trailer home and entered another trailer home in the vicinity pointed out by the eye witness. The police officer approached the other trailer home and noticed that a window was open and the screen knocked onto the

ground outside. The **Richter** court concluded that the officer's entry into the home was reasonable because the intruder was observed entering another trailer home and the window and screen situation gave an objective officer sufficient cause for concern for the safety of the occupants the officer observed sleeping in the trailer home.

As in **Richter**, the arresting officer here was responding to a burglary in progress at an address on Lorraine Ave. The officer was given a generic description of a young black male approximately 5'8" wearing a navy blue coat. While enroute, Officer Matson was told an individual matching this vague description entered an apartment building on Jacato Drive, roughly three blocks from the burglarized residence. When the officer encountered Evans, the officer had a reasonable basis to conduct an investigatory Terry stop. But at no time did the officer acquire probable cause to believe that Evans was the burglary suspect. The description was so generic that potentially many black males in the area could fit this description.

Further, under the circumstances, I do not find that the detention or seizure occurred in the apartment hallway. If outside the threshold of the apartment, the officer would be justified in detaining Evans long enough to conduct a Terry stop. Rather, I find that the officer had to cross the threshold of the apartment unit to seize the defendant. At that point, the officer needed a warrant to proceed further. It is not unreasonable to secure the perimeter and obtain a warrant or obtain the consent of the occupant to enter.

Also, there is no articulable basis in this record to find that an objective officer had reasonable suspicion to believe the residents of the unit were threatened. It was not until after the officer was inside the unit that the officer discovered the gun dropped by Evans.

## CONCLUSION

Mikkelson holds that the misdemeanor crime of obstructing an officer cannot justify the warrantless entry by the police into a residence under the exigent circumstance of hot pursuit. Officer Matson had reasonable suspicion for an investigatory Terry stop, but did not have probable cause to believe that Evans was the burglary suspect. Officer Matson did not have reason to believe that the residents of the unit were threatened. I find that the totality of circumstances in this case are more akin to Mikkelson than to Richter. Because the officer lacked probable cause to believe Evans had committed or was committing any crime other than obstructing, the entry into the residence violated Evan's Fourth Amendment rights.

Dated at Racine, Wisconsin, this 7th day of October, 2015

John S. Jude
Circuit Court Judge

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**ANDRE T. EVANS,**
      **Plaintiff,**

    **v.**
                                 **Case No. 20-C-476**

**ANDREW M. MATSON and**
**ROBERT L. RASMUSSEN,**
      **Defendants.**

---

## ORDER

Plaintiff Andre T. Evans, who was a prisoner when he filed this case, brings this action under 42 U.S.C. § 1983 alleging that the defendants violated his civil rights. The plaintiff is proceeding on claims that City of Racine Police Officers Andrew Matson and Robert Rasmussen entered a private apartment without a warrant and arrested him without probable cause in violation of the Fourth Amendment, an excessive force claim based on allegations that Officer Matson unnecessarily Tasered the plaintiff in violation of the Fourth Amendment, and a state law malicious prosecution claim against Officers Matson and Rasmussen. The defendants have filed a motion for summary judgment.

## I. BACKGROUND

On April 19, 2014, Officers Matson and Rasmussen responded to a burglary in progress call from a witness at 2812 Loraine Avenue around 10:30 p.m. The 911 dispatcher told the officers the suspect was identified by a witness as male, African American, about 5'8", wearing a navy jacket, and last seen on Jacato Drive. (Defendants'

Proposed Findings of Fact ("DPFOF"), ECF No. 39-2, at ¶ 7.)[1] Officers Matson and Rasmussen were both near Jacato Drive when they received the call.

Officer Rasmussen drove north on Jacato Drive and, within a minute of receiving the call from dispatch, observed "a subject matching the victim/witness' description." (DPFOF, ECF No. 39-2, at ¶¶ 11-12.) Officer Rasmussen observed the suspect enter the front door of an apartment building at 2627 Jacato Drive and reported his observation back to dispatch. Officers Matson and Rasmussen then entered the apartment building at 2627 Jacato Drive. After entering the building, Officer Matson observed "the suspect matching the victim/witness' report" in the first-floor hallway at that address.

At his deposition, the plaintiff explained that he was present at 2627 Jacato Drive because he was a visiting guest at his mother's apartment. According to the plaintiff, he did not match the witness's description because he wore an all-black jacket. (Plaintiff's Response to DPFOF, ECF No. 45, at 2, ¶15; ECF No. at 1 at p. 4.)[2]

The parties dispute what happened next. According to the defendants, the plaintiff saw Officer Matson in the hallway, appeared "startled," and ran down the hallway toward Apartment 9. (DPFOF, ECF No. 39-2, at ¶¶ 17-18.) Officer Matson stated he believed the plaintiff was the burglary suspect based on the plaintiff's flight and the matching

---

[1] Officer Matson's police report states that "dispatch stated the suspect was running southbound and then headed west *towards* Jacato Drive." (ECF No. 39-5 at 27.) The defendants did not file Officer Rasmussen's police report along with their summary judgment materials, but the plaintiff attached it to his complaint. (ECF No. 1-1 at pp. 1-3.) Officer Rasmussen's police report states, "Dispatch advised the suspect ran south in the 2800 block of Loraine av, then west on William St. Dispatch stated that [the victim/witness] lost sight of the suspect *on* Jacato Dr." (*Id.*)

[2] The court may consider the plaintiff's verified complaint as an affidavit at the summary judgment stage. *See Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996).

2

description provided by the witness. (DPFOF, ECF No. 39-2, at ¶ 19.) According to the defendants, the plaintiff ran into apartment 9 and tried to shut the door when Officer Matson observed the plaintiff drop a dark object onto the ground. (DPFOF, ECF No. 39-2, at ¶¶ 20-21.) Officer Matson then began to push open the door of Apartment 9.

Contrary to the defendants' description, plaintiff stated at his deposition that he first saw the officers as he was entering the apartment. (ECF No. 39-5 at p. 4 of 28, 7:4-18.) The plaintiff testified:

> I was going to close my door and I felt somebody push the door, so I turned around and I see a police officer and he is saying – saying something. I can't remember. We started fighting for the door and I let the door go and I went into the apartment where my mom and my family was.

(ECF No. 39-5 at p. 4 of 28, 7:13-18.)

The parties also dispute what happened after Officer Matson entered the apartment. According to the defendants, plaintiff turned to face Officer Matson in a "boxer's stance." (DPFOF, ECF No. 39-2, at ¶ 26.) Officer Matson says the plaintiff failed to comply with Matson's order to fall to the ground and he moved toward Matson in an aggressive manner. (DPFOF, ECF No. 39-2, at ¶¶ 27-29.) Officer Matson states he then fired his Taser at the plaintiff in self-defense and to obtain compliance from the plaintiff. (DPFOF, ECF No. 39-2, at ¶ 30.) Officer Matson then secured the plaintiff with handcuffs. (DPFOF, ECF No. 39-2, at ¶ 31.)

According to the plaintiff, after Officer Matson entered the apartment, the plaintiff "ran inside and put his hands in the air and did not do anything wrong and Officer Andrew Matson tazed [sic] me in front of my mother, brother, and other family members." (Pl. Resp. to DPFOF, ECF No. 45, at ¶¶ 27-31; Declaration of Andre Evans, ECF No. 46, at

3

pp. 1-2.) Officer Matson then arrested the plaintiff and transported him to the Racine County Jail. (*Id.* at 2.)

It is undisputed that Officer Matson located a fully loaded Smith and Wesson Model 19 revolver where he observed the plaintiff drop a dark item in the doorway. The plaintiff was arrested for Possession of a Firearm by a Felon, contrary to Wis. Stat. § 941.29, and Resisting/Obstructing an Officer, contrary to Wis. Stat. § 946.41(1). The plaintiff was also detained as a suspect in the burglary, although he was not charged with that offense.

The Racine County District Attorney charged the plaintiff with Possession of a Firearm by a Felon, contrary to Wis. Stat. § 941.29, and Resisting/Obstructing an Officer, contrary to Wis. Stat. § 946.41(1), in Racine County Criminal Court Felony Case 2014CF570. In that case, the defense filed a motion to suppress all evidence obtained from the warrantless entry into the apartment. (ECF No. 39-5 at 19.) The judge ruled in the plaintiff's favor, concluding that Officer Matson's entry into the residence violated the plaintiff's Fourth Amendment rights because Officer Matson lacked probable cause to believe the plaintiff had committed or was committing any crime other than obstructing. (ECF No. 1-1 at 6-10.) On March 14, 2016, the prosecution moved to dismiss the case.

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

4

## A. Fourth Amendment Claims

### 1. <u>False Arrest and Unlawful Arrest Claims</u>[3]

The defendants contend that they did not violate the plaintiff's rights under the Fourth Amendment because they had probable cause to arrest him for burglary. The defendants also contend that Officer Matson was justified in entering Apartment 9 without a warrant because he was "in hot pursuit of a fleeing suspect." According to the defendants, Officer Matson's "reasonable belief based on citizen victim/witness observations that the suspect before him had just moments before committed a burglary, gave Matson probable cause to arrest [the plaintiff] for the burglary offense" and the plaintiff could thwart a valid arrest in a public place by moving into his apartment and shutting the door. (ECF No. 39-1 at 9.)

In response, the plaintiff contends that the defendants did not have probable cause to arrest him. The plaintiff argues that I must deny the defendants' motion for summary judgment because in his criminal case Judge Jude determined that the defendants did not have probable cause to arrest him and that they violated his Fourth Amendment rights.

The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. CONST. amend. IV. Because arrests are seizures, claims of wrongful

---

[3] The plaintiff pled a "false imprisonment" claim. The court's original Screening Order did not allow the plaintiff to proceed on a false imprisonment claim because it construed the complaint as conceding that Matson had probable cause to arrest the plaintiff for obstructing. (ECF No. 6.) The plaintiff filed a motion for review in which he clarified that he did not concede that Officer Matson had probable cause to arrest him for obstructing an officer. The court therefore allowed the plaintiff to proceed on a Fourth Amendment "false imprisonment" claim. (ECF No. 15.) This claim, which is based on the plaintiff's allegations that he was arrested without probable cause is more accurately described as a "false arrest" claim.

5

arrests sound in the Fourth Amendment. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017). Generally, "'seizures are "reasonable" only if based on probable cause' to believe that the individual has committed a crime." *Bailey v. United States*, 568 U.S. 186, 192 (2013) (quoting *Dunaway v. New York*, 442 U.S. 200, 213 (1979)). Thus, the existence of probable cause is ordinarily an absolute bar to a claim for unlawful arrest under the Fourth Amendment and Section 1983. *Muhammad v. Pearson*, 900 F.3d 898, 907 (7th Cir. 2018).

"[P]olice officers may constitutionally arrest an individual in a public place (e.g., outside) without a warrant, if they have probable cause." *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001). However, "'searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). The Fourth Amendment "draw[s] a firm line at the entrance of the house" because "[t]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton*, 445 U.S. at 585, 590. Therefore, "police officers may not constitutionally enter a home without a warrant to effectuate an arrest, absent consent or exigent circumstances, even if they have probable cause." *Sparing*, 266 F.3d at 688.

As an initial matter, I consider whether Judge Jude's finding that defendants did not have probable cause has a preclusive effect on the plaintiff's claims for false and unlawful arrest. The Seventh Circuit has held that "[t]he effect of a judgment in subsequent litigation is determined by the law of the jurisdiction that rendered the judgment." *In re Catt*, 368 F.3d 789, 790-91 (7th Cir. 2004). Thus, Wisconsin law governs this issue. *See Id.*. In Wisconsin, "[o]ffensive collateral estoppel occurs when the plaintiff

6

seeks to foreclose a defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Michell T. v. Crozier*, 173 Wis.2nd 681, 684 n. 1 (1993). Offensive collateral estoppel can be used against a defendant who, although not a party to the earlier litigation, has legal interests aligned with those of a previous party. *See Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis.2nd 210, 226 (1999). To be so aligned, a litigant must have "sufficient identity of interest with a party to a prior proceeding" that the litigant's interests in the prior case can be deemed to have been litigated. *Id.*

In this case, the issue of whether the defendants had probable cause was litigated in plaintiff's state criminal case. However, the defendants were not a party in that case; the State of Wisconsin, not the defendants, prosecuted the plaintiff. Nor do the defendants have sufficient identity of interests that I can say the defendants' interests could be deemed to have been actually litigated in the criminal case. Prosecutors exercise independent discretion in pursuing cases and, in general, have "no interest in the potential civil liability of the police officers." *Cannady v. Sandoval*, 458 F. App'x. 563, 566 (7th Cir. 2012). Additionally, whether the defendants are protected by qualified immunity is a separate legal question than whether they had probable cause to arrest the plaintiff, *Fleming v. Livingston County, Ill.*, 674 F.3d 874, 879 (7th Cir. 2012), one which was certainly not litigated in the state criminal case. Thus, even if defendants were precluded from arguing they had probable cause, they would still be free to argue their actions were protected by qualified immunity.

I now turn to whether defendants had probable cause to arrest plaintiff. "Probable cause exists if at the time of the arrest, the facts and circumstances within the officer's

7

knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed...an offense." *Ramos v. City of Chicago*, 716 F.3d 1013, 1018 (7th Cir. 2013) (internal quotations and ellipses omitted). Probable cause does not require "demonstrating that it is more likely than not that the suspect committed a crime." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). "So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists." *United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005).

Here, the defendants believed plaintiff had committed burglary because plaintiff matched the race, gender, height, and clothing description provided by the witness. Plaintiff was also spotted shortly after the burglary was reported, and in an area near where the witness reported the suspect had fled. Although plaintiff argues he was wearing a black jacket, as opposed to the navy-blue jacket that the witness identified, courts have found probable cause where a suspect resembled, but did not exactly match, a witness's description. *See Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 524-25 (7th Cir. 2001). Taken in the aggregate, the similarity of the plaintiff to the witness's description, his temporal and geographic proximity to the crime, and the fact that officers reported seeing no one else who matched the description would give a person of reasonable caution reason to suspect plaintiff had committed a crime. Accordingly, I find the defendants had probable cause to arrest to plaintiff.

Even if defendants did not have probable cause, they are protected by qualified immunity on this issue. In a false arrest case, a defendant is protected by qualified immunity if "a reasonable officer could have mistakenly believed that probable cause

8

existed." *Fleming v. Livingston County, Ill.*, 674 F.3d 784, 880 (7th Cir. 2012). This standard is often dubbed "arguable probable cause." *Id.* Arguable probable cause is established when a reasonable police officer in the same circumstances and with all the same knowledge as the officer in question *could* have reasonably believed that probable cause existed. *Id.* Here, a reasonable police officer could have reasonably, if mistakenly, believed that probable cause existed. *See Id.* (finding arguable probable cause where a suspect was found near a crime scene approximate 7 minutes after the crime and suspect resembled, but did not perfectly match, witness's description). Additionally, to overcome a defendant's qualified immunity defense, a plaintiff must "identify a case where an officer acting under similar circumstances … was held to have violated the Fourth Amendment." *District of Columbia v. Wesby*, 138 S.Ct. 577, 590 (2018). The plaintiff has not done so here.

The next question is whether exigent circumstances existed for the defendants to pursue plaintiff into the apartment. The parties dispute where plaintiff was when the officers first encountered him, but according to plaintiff's version of the facts he was in the threshold of the apartment attempting to close the door when he noticed an officer pushing on the door. Defendants point to *United States v. Santana*, where the Supreme Court upheld a warrantless entry made during a "hot pursuit" of a felony suspect. 427 U.S. 38, 42-43 (1976). In *Santana*, the suspect was standing in her doorway, the police shouted "police!" and approached, and the suspect retreated inside her house. *Id.* at 40. The Court held that a suspect standing in the open doorway of her house was in a public place for Fourth Amendment purposes and stated that the suspect's "act of retreating into her house" could "not defeat an arrest" that had "been set in motion in a public place." *Id.*

9

at 42-43. Here, Plaintiff was either standing in the hallway and fled the officers or first encountered the officers standing in the doorway of the apartment with an open door before fighting with Officer Matson to close the door. In either case, plaintiff was standing in a public place, the police had probable cause to arrest him, he was made aware of the officers' presence, and then retreated into the apartment. These facts are analogous to *Santana*, and the officers were therefore entitled to follow him in to make an arrest. *See Id.* I will therefore grant the defendants' motion for summary judgment as to this claim.

2. Excessive Force

The defendants contend that Officer Matson did not use excessive force when arresting the plaintiff and that Matson is entitled to qualified immunity on this claim. The plaintiff, on the other hand, contends that Matson used excessive force when he deployed his Taser.

An arrestee's claim for excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). In determining whether an officer's use of force is reasonable, courts must balance the nature and quality of the intrusion upon the individual's Fourth Amendment rights against the countervailing government interests at stake. *Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 898 (7th Cir. 2004). The use of force is reasonable if the officer's actions were objectively reasonable in light of the facts and circumstances confronting the officer at the time. *Id.* When assessing whether the amount of police force was reasonable, the court looks to circumstances indicating, 1) the severity of the suspected crime, 2) whether the suspect posed an immediate threat to the officer on the scene or others, and 3) whether the suspect was actively resisting or attempting to evade arrest. *Id.* "Courts

10

generally hold that the use of a taser against an actively resisting suspect either does not violate clearly established law or is constitutionally reasonable." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 727-28 (7th Cir. 2013) (citing *Clarett v. Roberts*, 657 F.3d 664, 674-75 (7th Cir. 2011).

In this case, the plaintiff states that while he initially was "fighting for the door" with Officer Matson, he let go, ran into the apartment, put his hands above his head, and otherwise cooperated. On the other hand, the defendants state that when the plaintiff ran into the room, he turned to face Officer Matson in a "boxer's stance," failed to comply with orders to get on the ground and moved toward Matson in an aggressive manner. Based on these factual disputes, I cannot resolve this claim at summary judgment. A reasonable jury could find that Officer Matson's use of force on the plaintiff was unreasonable because, based on plaintiff's version of the incident, he put his hands above his head, and he was not a threat to Officer Matson. *See Abbott*, 705 F.3d at 730-31.

The defendants contend that they are entitled to qualified immunity. However, it was clearly established in April 2014, that police officers could not use significant force on non-resisting suspects. *See Abbott*, 705 F.3d at 732-33. Office Matson is not entitled to qualified immunity for the plaintiff's excessive force claim.

## B. Malicious Prosecution Claim

The defendants contend that the plaintiff's state law malicious prosecution claim is without merit because he cannot meet two of the six required elements of the claim. In response, the plaintiff argues that this malicious prosecution claim arises under the Fourth Amendment and he contends that to prevail on the claim he must show that he was unlawfully seized, detained, or apprehended and restrained for the purpose of taking him

11

into legal custody in violation of his rights and that a prosecution was commenced and terminated in his favor.

Contrary to the plaintiff's assertions, his malicious prosecution arises under Wisconsin state law. In *Newsome v. McCabe*, the Seventh Circuit held that there is no "constitutional tort of malicious prosecution where a state provides a meaningful tort remedy for malicious prosecution." *Armstrong v. Daily*, 786 F.3d 529, 541 (7th Cir. 2015) (citing *Newsome v. McCabe*, 256 F.3d 747, 750–51 (7th Cir. 2001)). And, the Seventh Circuit has held that "the availability of Wisconsin's tort for malicious prosecution forecloses a federal claim under § 1983 that [a defendant] maliciously launched a prosecution." *Gordon v. Miller*, 528 F. App'x 673, 674 (7th Cir. 2011) (citing *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011) and *Newsome*, 256 F.3d at 750–51)).

Under Wisconsin law, the plaintiff's claim for the tort of malicious prosecution requires six elements: (1) a prior institution or continuation of judicial proceedings against the plaintiff; (2) the former proceedings were "by, or at the instance of," the defendants; (3) the prior proceedings terminated in the plaintiff's favor; (4) malice on the part of the defendants in instituting the former proceedings; (5) a want of probable cause in instituting the former proceedings; and (6) injury or damage resulting to the plaintiff from the former proceedings. *Strid v. Converse*, 111 Wis.2d 418, 423, 331 N.W.2d 350 (1983). The absence of any one element is fatal to the claim. *Id.*

Here, the plaintiff cannot satisfy element five, the want of probable cause in instituting the former proceedings. I have already held that the defendants had probable cause to arrest the plaintiff, so his malicious prosecution claim fails. Additionally, plaintiff does not point to any evidence supporting an inference that the defendants acted with

12

malice, and therefore fails to satisfy the fourth element. I will therefore grant the defendants' motion for summary judgment on this claim.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for summary judgment (ECF No. 39) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to the plaintiff's malicious prosecution claim, false arrest, and unlawful arrest claims. The motion is denied as to the plaintiff's excessive force claim.

Dated at Milwaukee, Wisconsin, this 29th day of March, 2022.


s/ Lynn Adelman
LYNN ADELMAN
United States District Judge

# United States District Court

## EASTERN DISTRICT OF WISCONSIN

**JUDGMENT IN A CIVIL CASE**

ANDRE T. EVANS,
        Plaintiff,

      v.                            CASE NUMBER: 20-CV-0476

ANDREW M. MATSON and
ROBERT L. RASMUSSEN,
        Defendant.

☐    **Jury Verdict.**  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒    **Decision by Court.**  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

    **IT IS ORDERED AND ADJUDGED** that this case is **DISMISSED** without prejudice.

09/22/2023
Date

Gina M. Colletti
Clerk

/s/B. Xiong
(By) Deputy Clerk